United States District Court
Southern District of Texas
**ENTERED**
March 26, 2020
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EMBARCADERO TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-570 |
| | § | |
| NCR CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION GRANTING SUMMARY JUDGMENT**

There is one threshold issue in this suit alleging copyright infringement. Did any of the six alleged infringing acts of downloading unlicensed copies of Embarcadero's copyrighted software programs Delphi, C++ Builder, and RAD Studio, take place in the United States? The Copyright Act, 17 U.S.C. §§ 101–810, does not apply to extraterritorial acts. NCR submitted uncontroverted evidence that the downloads were by individuals who lived in Serbia, Israel, Italy, or India, and who worked for NCR subsidiaries that are independent entities located in those countries. In response, Embarcadero moves for additional time for discovery and a supplemented response, under Rule 56(d), and argues that there is evidence that one of the six alleged infringing acts occurred in part in this country. (Docket Entry No. 29). NCR replied, and Embarcadero surreplied. (Docket Entry Nos. 30, 33).

Based on the pleadings, the motion and responses, the summary judgment evidence, and the applicable law, the court denies Embarcadero's Rule 56(d) motion because it presents an insufficient basis for the relief sought, and grants NCR's motion for summary judgment because the undisputed facts show that, as a matter of law, the infringing acts all occurred outside the United States. Final judgment is entered by separate order.

The reasons for these rulings are set out below.

## I.     Background

NCR, formerly known as National Cash Register, is a publicly traded software, technology, and consulting company headquartered in Atlanta, Georgia.  It has been an AT&T subsidiary since 1992.  NCR's subsidiaries listed in its S.E.C. disclosures and filings are many and far-flung.  They include NCR Serbia, NCR Italy, NCR India, and NCR Israel.

### A.     The Summary Judgment Evidence

NCR has submitted the following evidence in support of its motion for summary judgment:

1.  the declaration of Gill McLearnon, NCR Corporation Human Resources Vice President for Europe, the Middle East, and Africa, (Docket Entry No. 26-2);

2.  Embarcadero's Rule 26(a)(1) initial disclosures, (Docket Entry No. 26-3);

3.  the declaration of Paul Farley, senior director of the Cyber Defense Center and Deputy Chief Information Security Officer for NCR, (Docket Entry No. 26-4); and

4.  emails between counsel for the parties, (Docket Entry Nos. 26-5, 26-6).

Embarcadero responds with:

1.  a declaration by David Sanchez, Global Manager of License Compliance for Embarcadero, (Docket Entry No. 29-1); and

2.  a declaration of Jennifer Trillsch, Esq. with Jones & Spross, LLP, counsel for Embarcadero in this case, (Docket Entry No. 29-2).

### B.     The Facts Shown by the Evidence

Embarcadero filed this lawsuit on February 19, 2019, alleging that NCR downloaded unlicensed copies of one or more versions of Embarcadero's software programs Delphi, C++ Builder, and RAD Studio "at other world-wide NCR facilities," but without specifying where the alleged infringements occurred.  (Docket Entry No. 1 at 6).  The parties agreed to limited

discovery, starting with discovery into evidence related to the location of the alleged infringements. (Docket Entry No. 19 at 5–6). That discovery, along with pre-suit communications between the parties, identified six persons alleged to have downloaded one or more versions of the software without authorization. (Docket Entry Nos. 12-3, 12-8, 26-5, 26-6). The first of those individuals was identified in pre-suit communications as Sofija Bogicevic of Belgrade, Serbia. (Docket Entry No. 12-8; Docket Entry No. 26-2 at 4). That information was consistent with Embarcadero's initial disclosures identifying the following individuals as those downloading the copies of Delphi, C++ Builder, and RAD Studio software:

- Stefano Bordoni of Milan, Italy;

- Vamsidhar Vallabhajosyula of Telangana, India;

- Manjunanth Sarla of Telangana, India;

- Pavel Belinsky of Ra'Anana, Israel; and

- Manikan Devandran of Telangana, India.

(Docket Entry No. 26-3 at 3).

Stefano Bordoni is an employee of NCR Italia S.r.l. ("NCR Italy") and resides in Milan, Italy; Vamsidhar Vallabhajosyula and Manikan Devandran are both contract workers for NCR Corporation India Private Limited ("NCR India"), and both reside in Telangana, India; Manjunanth Sarla is an employee of NCR India and resides in Telangana, India; and Pavel Belinsky is an employee of NCR Israel Ltd. ("NCR Israel") and resides in Ra'Anana, Israel. (Docket Entry No. 26-2 at 3).

NCR Italy is a subsidiary of NCR located in Milan, Italy; NCR India is a subsidiary of NCR located in Telangana, India; and NCR Israel is a subsidiary of NCR located in Ra'Anana, Israel.  (*Id.*).

On May 7, 2018, Embarcadero emailed NCR a "Notice of License Violation," alleging that NCR was using the software without software license agreements.  (Docket Entry No. 12-3). The "Notice of License Violation" stated that it was "possible that the particular usage in question is covered by a valid license."  (*Id.*).  The May 7, 2018 notice identified a single machine at the MAC address E4:A7:A0:40:97:19 as having used the RAD Studio 10.2 Tokyo Architect software on May 2, 2018.  (*Id.* at 3).  On May 20, 2018, Embarcadero identified this user as "jj250211" in the corp.ncr.com domain.  (Docket Entry No. 12-8).  The "jj250211" user is Sofija Bogicevic, an employee of NCR d.o.o Beograd, who resides in Belgrade, Serbia. (Docket Entry No. 26-2 at 4).  NCR Serbia is a subsidiary of NCR and is located in Belgrade, Serbia.  (*Id.*).

NCR's evidence showed that the NCR corporate family IT network is logically connected under the corp.ncr.com domain.  This "domain" refers to this logical connection, not a server. (Docket Entry No. 26-4 at 3).  The association of a computer to the corp.ncr.com domain does not indicate the location of that computer or its user.  (*Id.*).  Nor does the computer's association to the corp.ncr.com domain indicate that software downloaded to that computer resides on any NCR server in the United States.  (*Id.*).  Rather, according to NCR, software downloaded from the Internet to a computer within the corp.ncr.com domain is downloaded directly to the laptop of the employee downloading that software.  (*Id.*).  NCR does not store or cache software downloaded by its employees and contractors onto its servers.  (*Id.*).

4

Embarcadero identified the following file names of the software downloads at issue: radstudio10_3_0_esd_94364.exe; radstudio10_3_1_esd_194899.exe; radstudio10_2_3_esd_9323l.exe - 1 0.2.3 CE; radstudio10_2_3_esd_2631.exe - 10.2.3; radstudio10_2_2_esd_2004.exe - 10.2.2; radstudio10_2_1_esd.exe - 10.2.l; and radstudio10_2_esd.exe - 10.2 ("RAD Studio Files"). (*Id.* at 4; Docket Entry No. 26-6 at 3–4). Embarcadero confirmed that this list is "all of the implicated downloads" in this case. (*Id.* at 2–3). NCR asserts that none of these files are on any NCR server. (Docket Entry No. 26-4 at 4).

In response, Embarcadero submits evidence of one event of NCR's allegedly unauthorized use of the RAD software on May 2, 2018. (Docket Entry No. 29-1 at 2). The user's email address was jj250211@ncr.com. (*Id.*). This email address matches the format for many other NCR employees on file. The email corresponds to the NCR Serbia employee located in Belgrade, Sofija Bogicevic. Embarcadero argues that based on the public IP address, the registration in the UTC-6:00 time zone (Chicago), and the choice of English as the language and United States as the region, the server is located in Atlanta, Georgia, in the United States. (Docket Entry No. 29 at 4).

NCR contends that the evidence Embarcadero submits does not raise any factual dispute material to deciding that there is no infringing act in this case occurring even in part in the United States. NCR points to the undisputed evidence it submits that the email and IP addresses of its affiliates' employees or subcontractors using a computer for a download signifies nothing about where that use took place, where the user is located, or that the download goes to a server that is located in the United States. To the contrary, NCR points to uncontroverted evidence that defeats Embarcadero's argument that the association of the laptop used by an employee of NCR Serbia who works and resides in Belgrade with the corp.ncr.com domain name, or the common

format of their email addresses—name@ncr.com—says anything about where or how the software is downloaded to computers in the foreign NCR affiliated entities or whether it is on an NCR server anywhere, much less in the United States.  The declaration of Paul Farley, NCR's Deputy Chief Information Security Officer, states as follows:

> Plaintiff's assumption that because it has associated alleged unlicensed versions of its software on laptops in India, Italy, Israel and Serbia through the corp.ncr.com domain that copies of that software must reside or must have resided on NCR servers in the United States is wrong.

> The entire NCR corporate family IT network is logically connected under the corp.ncr.com domain for efficient communication between the various NCR corporate entities and for access to enterprise-wide software like accounting and HR software shared by the NCR corporate family.  This domain refers to the logical connections between all of NCR corporate family's servers across the globe (and not one server in the United States).  That logical connection does not change the individual corporate status of those NCR entities, nor does it mean that computers connected under it are in the United States.

> The association of all NCR entities to the domain corp.ncr.com has nothing whatsoever to do with how or where software is downloaded to computers in foreign NCR entities.  Software downloaded by employees through the Internet does not reside nor is stored on NCR servers anywhere.  Such software would be downloaded directly to the employee's laptop undertaking to download the software.  Neither NCR Corporation nor any of its subsidiaries stores or even caches software downloaded by employees and contractors onto its servers.  For example, if an NCR India employee downloads software to his laptop in India, that employee would connect directly from his laptop to the site on the internet and download to his laptop in India.

> I am also informed that counsel for plaintiff identified the following file names of the software allegedly copied without a license: radstudio10_3_0_esd_94364.exe; radstudio10_3_1_esd_194899.exe; radstudio10_2_3_esd_93231.exe - 10.2.3 CE; radstudio10_2_3_esd_2631.exe - 10.2.3; radstudio10_2_2_esd_2004.exe - 10.2.2; radstudio10_2_1_esd.exe - 10.2.1; and radstudio10_2_esd.exe - 10.2.  I conducted a search for these files on all of NCR's US servers and did not find any of these files on any NCR server.

> Accordingly, I hereby confirm that any software allegedly downloaded by the referenced employees did not reside, and never resided, on any NCR server, including any server in the United States, as a result of the alleged unlicensed downloads.

(Docket Entry No. 26-4 at 3–4).

In response to this argument, Embarcadero urges that it should be allowed added discovery and a chance to supplement the record. It seeks extremely broad discovery, far beyond the scope of this litigation and the threshold issue the court is examining. The requested discovery includes "all software downloaded by NCR in the past three years," any employees in foreign countries working on projects "located in" the United States, documents showing how the entire NCR foreign corporate affiliate IT system is configured and how it works, NCR's corporate structure, and the search NCR conducted of its servers to see if the specified Embarcadero files were on them. (Docket Entry No. 29 at 11–12). NCR challenges both the scope of these requests and the need, asserting that Embarcadero could have sought such discovery but did not begin to do so until after NCR moved for summary judgment, weighing against relief under Rule 56(d).

## II.     The Legal Standards

### A.     Rule 56

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd on Behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and

identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (alteration omitted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). "If the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate "the precise manner in which" that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*,

920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam)).

Federal Rule of Civil Procedure 56(d) governs a party's request for additional discovery before responding to a motion for summary judgment.  If the nonmovant shows that "it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  Rule 56(d) was designed to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose."  *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006).  Rule 56(d) discovery motions are "broadly favored and should be liberally granted."  *Id.*  A request under Rule 56(d) must, however, "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."  *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quotations omitted).  The movant may not "simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."  *Id.*  The trial court may cut off a party's entitlement to discovery before a summary-judgment ruling when the record indicates that further discovery will not likely produce facts necessary to defeat the motion.  *Id.*; *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992).

### B.     The Copyright Act

"A claim of copyright infringement has two elements: (1) ownership of a valid copyright; and (2) copying constituent elements of the work that are copyrightable."  *Geophysical Serv. Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 791 (5th Cir. 2017) (citing *Bridgmon v. Array*

*Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). But "the Copyright Act has no extraterritorial application." *Geophysical*, 850 F.3d at 796; *see also Jaso v. Coca Cola Co.*, 537 F. App'x 557, 560 (5th Cir. 2013) (per curiam). "That limit arises from the background presumption that legislation reaches only domestic conduct." *Geophysical*, 850 F.3d at 791. Other circuit courts that have directly considered the issue have also concluded that federal copyright laws do not reach infringing conduct entirely outside the United States. *See, e.g.*, *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1092 (9th Cir. 1994); *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988). *But see Expediters Int'l of Wash., Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468, 476 (D.N.J. 1998) ("[T]he mere authorization of infringing acts abroad constitutes direct infringement and is actionable under United States Copyright Law."); *Curb v. MCA Records, Inc.*, 898 F. Supp. 586, 595 (M.D. Tenn. 1995) (authorizing the release of copyrighted music outside the United States is actionable under federal copyright law).

## III.   Analysis

### A.      The Request for Rule 56(d) Relief

Two sets of problems weigh against granting Embarcadero's motion to defer its response to, and this court's decision of, the motion for summary judgment until it takes more discovery. The first set is that the discovery it seeks is far broader than justified by the need for information it identifies. As noted, the request for discovery into the entire architecture of NCR's worldwide IT system and for all software downloads by NCR worldwide for the last three years seeks far more than the threshold issue in this case requires. The request for discovery into the corporate structure of NCR ignores the availability of significant amounts of information on NCR's extensive publicly available SEC filings. The request for NCR's documents disclosing both its search inquiry for the file names associated with the alleged unauthorized use and their presence

10

on United States NCR servers fails to account for the presumptive self-policing nature of discovery and the absence of any basis to infer a deficient or bad-faith search that would justify the requested discovery into discovery.   Embarcadero cites an inconsistency between the affidavit of Paul Farley, stating that a search did not reveal the presence of the software files at issue on any NCR server, and a May 10, 2018, email from NCR's chief counsel "admitting that Embarcadero's software had been downloading onto NCR's server."  (Docket Entry No. 29 at 11).  The email Embarcadero appears to refer to states that NCR "investigated the matter and understand[s] it involves a single employee in NCR Serbia who downloaded one trial version of the software on his personal computer."  (Docket Entry No. 12-4 at 2).  The email is not inconsistent with Paul Farley's affidavit, because software that an NCR employee downloads to his laptop is not stored or cached on NCR's servers.  (Docket Entry No. 26-4 at 3).  Finally, the request for discovery into NCR employees in foreign countries working on projects "located in" the United States appears to go to general jurisdiction, which is not the issue, nor is there a plausible indication that it could or should be.

Second, it is unclear that the facts for which the continuance and additional discovery are sought would enable Embarcadero to oppose summary judgment on the narrow ground presented.  Much of the requested discovery goes far beyond, or does not involve, facts critical to the jurisdictional issue, such as the request for many other employees' activities, or for activities apparently bearing on general rather than specific jurisdiction.  It is, in short, inadequately shown that the discovery in general would alter the outcome of the summary judgment motion.

Third, it is unclear why Embarcadero delayed in seeking a narrower set of the discovery it claims it needs.  It was clear at least by July 2019, when NCR moved to dismiss for lack of subject matter jurisdiction and failure to state a claim, that the extraterritorial nature would be a

dispositive threshold issue.  It was clear by September 2019, when the court held an in-court Rule 16 hearing, that NCR would be moving for summary judgment on this ground.  The parties agreed on a phased discovery approach, beginning with discovery targeted at evidence showing a nexus between the six specific alleged acts of infringement and the United States, leading up to a motion for summary judgment (and perhaps cross-motions).   Voluntary exchanges of information provided a jump start.  Embarcadero does not explain why these specific areas of discovery were not further explored, even informally, earlier in the case, or the need for added formal discovery diligently sought through the expedited discovery—dispute resolution procedures the court makes available when requested.

The request for deferral and denial of NCR's motion is denied.

**B.     The Rule 56(a) Motion for Summary Judgment**

NCR has presented undisputed summary judgment evidence that the six alleged instances of copyright infringement all occurred outside the territorial United States, and no part of the infringing acts occurred within the United States.  The evidence is undisputed that each individual who downloaded Embarcadero's software without authorization or license was an employee or contractor of an NCR foreign subsidiary; each employee or contractor lived or worked overseas; and none of the six software downloads was stored on an NCR server in the United States.  (Docket Entry No. 26-2 at 2–3; Docket Entry No. 26-3 at 3; Docket Entry No. 26-4 at 3).

The law is undisputed as well.  The Copyright Act does not extend to extraterritorial acts of infringement.  *See, e.g.*, *Geophysical*, 850 F.3d at 796; *Litecubes, LLC v. Light Prods., Inc.*, 523 F.3d 1353, 1363 (Fed. Cir. 2008).  The record shows, as a matter of law, no actionable claim under the Copyright Act because of the inability to prove this element of the claim.  *Id.*  NCR's

motion for summary judgment, (Docket Entry No. 26), is granted.  Final judgment is entered by separate order.

SIGNED on March 26, 2020, at Houston, Texas.

_____

Lee H. Rosenthal
Chief United States District Judge